UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ANTONIO SMITH,

          Plaintiff,

   v.

                               1:21-cv-01406-MSN-IDD

CARLOS DEL TORO, Secretary
United States Department of the Navy,

          Defendant.

## MEMORANDUM OPINION & ORDER

This matter comes before the  Court on defendant's Motion for Summary Judgment (Dkt. No. 10). On June 17, 2022, the Court held a hearing on the motion, following which it took the matter under advisement. *See* Dkt. No. 22. Plaintiff is an African-American man employed by the United States Department of the Navy in Quantico, Virginia. He served as the Operations Branch Head/Operations Officer (Supervisory) Training & Education Capabilities Division[1] from September 2009 through August 2019. Plaintiff's direct supervisor from 2009–2012 and 2015–2017 was Terry Bennington.[2] Bennington retired in 2017 and Col. Patrick Hittle was tasked with finding his replacement. In February 2018, Hittle selected Edward Sobieranski to fill that position. Plaintiff alleges Col. Hittle chose Sobieranski over plaintiff for the position because of plaintiff's race and in retaliation for past Equal Employment Opportunity complaints plaintiff had filed against the department, including Col. Hittle. For the reasons that follow, the Court **GRANTS** defendant's motion and dismisses this case.

---

[1] This division later was renamed the Range Training Programs Division. Plaintiff later served as the Management Program Analyst (Non-Supervisory), Doctrine Branch, Policy and Standards Division from August 2019 through October 2021. Then, plaintiff was detailed to the Operations and Support Branch as the Deputy Operations Branch Head (Non-Supervisory) from October 2021 through the date of filing.

[2] From 2015 to 2018, plaintiff's second level supervisor was Col. Patrick Hittle.

## I.  Background

Pursuant to Local Rule 56(B), defendant included twenty-eight paragraphs in his statement of undisputed facts. *See* Def.'s Stmt. of Facts ("SOF") (Dkt. No. 11) at 2–8. Plaintiff purports to dispute or challenge fourteen of those paragraphs in his opposition brief. *See* Pl. Br. (Dkt. No. 16) at 4–10. However, plaintiff fails to adequately refute many of the constituent facts contained within those paragraphs. After a thorough examination of the record and as set forth below, the Court finds certain facts to be undisputed despite plaintiff's efforts to place them in dispute. *Cf. Apedjinou v. Inova Health Care Servs.*, Case No. 1:18-cv-00287, 2018 WL 11269174, at *1 (E.D. Va. Dec. 19, 2018) ("The nonmovant's failure to respond to a fact listed by the movant or to cite to admissible record evidence constitutes an admission that the fact is undisputed."); *Cincinnati Ins. Co. v. Am. Glass Indus.*, Case No. 1:07-cv-1133, 2008 WL 4642228, at *1 (E.D. Va. Oct. 15, 2008) ("[T]he Court assumes that facts alleged in the motion for summary judgment are admitted unless controverted by the responding opposition brief.") (internal quotations omitted).

The Court's review of the record reveals the following undisputed facts:

### a.  **Plaintiff's Employment History**

Plaintiff identifies as an African-American male and is currently employed in the United States Department of the Navy. SOF ¶ 1. Between September 2009 and August 2019, he served as the Operations Branch Head or Operations Officer within the Training & Education Capabilities Division of the United States Marine Corps ("TECD"). *Id.* ¶ 2. From April 2015 to July 2017, plaintiff's direct supervisor was Terry Bennington, the Deputy Director of TECD. *Id.* ¶ 3. Bennington is Caucasian. *See* Def. Ex. 1 at 2.[3] From November 2015 to August 2018, plaintiff's second-level supervisor was Col. Patrick Hittle, the Director of TECD. SOF ¶ 3. Col. Hittle also

---

[3] Defendant's Exhibits 1–17 appear at Dkt. No. 11-1.

is Caucasian. *See* Def. Ex. 1 at 2. Thus, between November 2015 and July 2017, plaintiff's chain of command included both Bennington and Col. Hittle. SOF ¶ 3.

In June 2015, plaintiff filed an Equal Employment Opportunity Commission ("EEOC") complaint alleging racial discrimination in connection with the hiring process that led to Bennington's selection as the Deputy Director of TECD in April 2015, approximately three years prior to the hiring selection that is the subject of this case. SOF ¶ 4; Def. Ex. 7 at 2. In December 2015, Col. Hittle learned of that complaint. SOF ¶ 5. Plaintiff filed a second EEOC complaint in September 2016, in which he named Bennington and Col. Hittle as the discriminating officials. SOF ¶ 4; Def. Ex. 4 at 2, 4; Def. Ex. 7 at 2; Compl. (Dkt. No. 1) ¶ 22.

### b.    The Selection Process

On or about July 31, 2017, Bennington retired from his position as Deputy Director/Supervisory Head of TECD, leaving his position vacant. SOF ¶ 7; Def. Ex. 6 at 1. On October 11, 2017, a vacancy for the position of Deputy Director/Supervisory Head of TECD was announced and made open for selection. SOF ¶ 9. Col. Hittle acted as the selecting official for the position. *Id.* Plaintiff applied for the position, as did Edward Sobieranski. *Id.* ¶ 10. Sobieranski is Caucasian and began serving as the acting Deputy Director/Supervisory Head of TECD following Bennington's retirement. *Id.* ¶ 8. Before that, Sobieranski had been the Branch Head for the Range & Training Area Management Branch ("RTAMB") in TECD and was a GS-14 employee like plaintiff. *Id.*

The selection process for the Deputy Director/Supervisory Head position consisted of three separate phases: (1) a resume review panel; (2) an interview panel; and (3) final interviews with the selecting official, Col. Hittle. *Id.* ¶ 11. The resume review panel consisted of three individuals. *Id.* ¶ 12. They conducted their resume review on December 12, 2017, ranking and scoring 72

resumes. *Id.* The resume review panel rated plaintiff with an overall score of 145 and Sobieranski with a score of 138. *Id.* ¶ 13. Importantly, although plaintiff received a higher score in his overall resume rating, both individuals received the same score for "experience" as reflected by their resumes. *Id.* Three other individuals scored higher than plaintiff on the overall resume review, with one other individual also receiving a score of 145. *Id.* Two other individuals scored higher than plaintiff for their "experience." *Id.*

On December 27, 2017,[4] interviews were offered to the top fourteen eligible candidates following the prior panel's resume review. *Id.* ¶ 14. Both plaintiff and Sobieranski were among those selected. *Id.* All fourteen interviews were conducted between January 3 and 4, 2018, and the interview panel recommended their three top candidates and two alternate candidates for the selecting official to interview. *Id.* The interview panel consisted of four individuals. *Id.* ¶ 15. One panel member later testified that "[plaintiff] and [Sobieranski] were by far the top two candidates," noting that "the panel was blown away" by plaintiff "but when [Sobieranski] interviewed later [the panel] again said 'holy cow' he was really good as well." *Id.* That interviewer also testified that if he was "the selecting official, [he was] not sure who [he] would have picked between the two as it was that close and a really tough call." *Id.* A different interviewer testified that he would have ranked Sobieranski as the top candidate for the position, immediately followed by plaintiff as the "Number 2" candidate. *Id.*

---

[4] On September 28, 2017, plaintiff recorded that Col. Hittle had reassigned a contractor away from plaintiff's supervision "without any notice." Def. Ex. 5 at 5. On December 20, 2017, Col. Hittle detailed another individual away from plaintiff's supervision. *Id.* at 4. Plaintiff responded to Col. Hittle that same day by stating he felt Col. Hittle was "purposefully marginalizing" him through both this action and the similar one Col. Hittle took in September of that year. Plaintiff continued that he "believe[d] [Col. Hittle's] actions [we]re because [plaintiff] ha[d] an EEO[C] complaint against T[raining and ]E[ducation ]C[ommand] that include[d] [Col. Hittle]" and "ask[ed] that [he] be allowed to work free of marginalization, discrimination, and other adverse actions." *Id.* Col. Hittle responded that he believed plaintiff's "wording indicate[d] . . . a complaint on [plaintiff's] part" and told plaintiff to "feel free to consult with HR" regarding the issue. *Id.*

Col. Hittle chose to interview the three unranked candidates provided to him by the lower panel—plaintiff, Sobieranski, and a third individual. *Id.* ¶ 16. On January 9, 2018, Col. Hittle conducted final interviews of those three candidates.[5] *Id.* In advance, Col. Hittle provided each candidate with interview questions he had drafted based on what he believed the responsibilities for the position would entail. *Id.* ¶ 17. Those questions were "screened and reviewed in accordance with Human Resources policy and standard practices[,] and focused on eliciting technical details of each candidate's job history, understanding the candidate's unique approach to problem solving, and offering the candidate an opportunity to indicate how he or she might best leverage their management skills and knowledge to meet" TECD's needs. Def. Ex. 6.

On February 18, 2018, upon Col. Hittle's selection, Sobieranski became the Deputy Director/Supervisory Head of TECD. SOF ¶ 20. Col. Hittle later stated in a sworn statement that he viewed plaintiff as "a very close second to Mr. Sobieranski" among applicants for the position. SOF ¶ 18; Def. Ex. 7 at 6. However, Col. Hittle continued in his sworn statement that he believed Sobieranski was the best candidate because while plaintiff "had a lot of general experience working on the training simulation [he] did not have the background in developing policy." SOF ¶ 18; Def. Ex. 7 at 4. Col. Hittle continued in his sworn statement that Sobieranski, by contrast, "previously wrote Marine Corps orders, policies, and directives and that is what [TECD] need[ed] to do in the upcoming years." SOF ¶ 18; Def. Ex. 7 at 4. Col. Hittle also explained in his sworn statement that he believed Sobieranski had experience that would be useful to the range and training areas with which TECD was involved. SOF ¶ 18; Ex. 7 at 4. Further, Col. Hittle noted in his sworn statement that, while both candidates were experienced, Sobieranski had been in the command longer than

---

[5] Stephanie Andrews of the Marine Corps Command Personnel Office also attended each interview.

plaintiff and that he believed plaintiff could not offer the same amount of tangible examples of cross-service coordination that Sobieranski could. SOF ¶ 18; Def. Ex. 7 at 4-6

### c.      The EEO Proceedings[6]

On April 30, 2018, plaintiff filed a formal EEOC complaint, alleging that Col. Hittle's decision to select Sobieranski over him for the Deputy Director/Supervisory Head position was motivated by animus directed at his race and was "in retaliation for his prior EEO[C] activity (complaints filed in 2015 and 2016)." *Id.* ¶ 21; Def. Ex. 17 at 3. In response, the Marine Corps commenced an investigation of plaintiff's claims, which resulted in a Report of Investigation ("ROI") spanning more than 200 pages. SOF ¶ 22. Plaintiff then sought a hearing before an EEOC Administrative Judge ("AJ") on November 9, 2018. *Id.* After both plaintiff and the Marine Corps informed the AJ that they did not need further discovery to present their arguments, a hearing with live witness testimony was held on December 6, 2019. *Id.* ¶¶ 23–24.

Plaintiff and Col. Hittle both testified during the December 6, 2019 hearing. *Id.* ¶ 24. When specifically asked by the AJ if he took any steps to respond to plaintiff's concerns in December 2017 about the re-assignment of contractors and plaintiff's feeling that he was being marginalized, *supra* n.3, Col. Hittle answered that he "felt that [he] was being drug into the conversation about the prior EEO action from [plaintiff]" but that "[he] didn't want to be involved in that" and that Col. Hittle's "goal was not to take people from [plaintiff]" but to "get the work done and put the resources in the right place." *Id.* Col. Hittle added that he believed he "had to walk around [plaintiff] on eggshells," meaning that he had to be "overly sensitive" to plaintiff's concerns while he otherwise "did everything in [his] power to be [] honest with [plaintiff] and straightforward."

---

[6] Plaintiff objects to defendant's recitation of what happened during the EEOC proceedings under a theory that "the findings of an administrative review have no weight at the summary judgment stage." Pl. Br. at 8–10. The Court includes the following information solely to provide a fulsome recitation of the procedural history in this matter. Accordingly, plaintiff's objection has no bearing on the Court's decision.

*Id.* When asked to further explain his "eggshells" comments, Col. Hittle continued that he "had never been the subject of an EEO complaint" and that being named in one by plaintiff in September 2016 made him "[feel] like [he] had failed in something" as he "[didn't] want anyone to feel that they're being not given full opportunity to perform their best." *Id.* Col. Hittle also testified that, despite his feeling of walking on eggshells, he believed that he and plaintiff were able to get work done on time and in a professional manner. *Id.*

On March 4, 2020, the AJ issued a decision in favor of the Marine Corps. *Id.* ¶ 26. Reconsideration of that decision was denied on September 27, 2021. *Id.* ¶ 27.

### d.    Procedural History Before This Court

On December 17, 2021, plaintiff filed a Complaint in this Court alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). *See* Compl. ¶¶ 38–45. In response, defendant filed a consent motion for a briefing schedule that would allow defendant to "move for summary judgment in responding to the Complaint rather than initially moving to dismiss or file an Answer." *See* Dkt. No. 8. The Court granted defendant's request. *See* Dkt. No. 9. On May 13, 2022 defendant moved for summary judgment, and the Court heard argument on defendant's motion on June 17, 2022. *See* Dkt. Nos. 10, 22.

## II.  Standard of Review

Summary judgment is proper where, viewing the facts in a light most favorable to the non-moving party, there remains no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Evans v. Tech. Apps. & Servs. Co.*, 80 F.3d 954, 958–59 (4th Cir. 1996). A party opposing a motion for summary judgment must respond with specific facts, supported by proper documentary evidence, showing that a genuine dispute of

material fact exists and that summary judgment should not be granted in favor of the moving party. *Anderson*, 477 U.S. at 250. As the Supreme Court has held, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 519 (4th Cir. 2003) (quoting *Anderson*, 447 U.S. at 247–48). A dispute over an issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 446 U.S. at 248.

On a motion for summary judgment in an employment case, the Court is not required to accept conclusory assertions regarding plaintiff's own state of mind, motivations, or perceptions regarding the employment actions at issue. *See Goldberg v. B. Green & Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988).

## III. Analysis

### a.      Discrimination (Claim I)

At the summary judgment stage, to establish a *prima facie* claim of discrimination through non-selection, plaintiff must either offer sufficient direct evidence of discrimination or proceed under the familiar *McDonnell Douglas* burden-shifting framework that requires plaintiff to show that: (1) he was a member of a protected group; (2) he applied for the position in question; (3) he was qualified for the position; (4) he was rejected for the position in favor of someone not a member of the protected group under circumstances giving rise to an inference of unlawful discrimination. *Burgess v. Bowen*, 466 F. App'x 272, 280–81 (4th Cir. 2012); *see also Tawwaab v. Va. Linen Serv., Inc.*, 729 F. Supp. 2d 757, 780 (D. Md. 2010). Upon a *prima facie* showing, the defendant then assumes the "burden of production . . . to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Texas Dep't of Cmty. Affairs v. Burdine*,

450 U.S. 248, 253 (1981) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If defendant meets this burden, plaintiff must then prove by a preponderance of the evidence that defendant's articulated "legitimate, nondiscriminatory reason" is pretext for discrimination. *Id.* The plaintiff's burden to show pretext in this context "merges with the plaintiff's ultimate burden of persuading the court that []he was a victim of intentional discrimination." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016). Thus, the "ultimate question . . . is whether the plaintiff was the victim of intentional discrimination" in the employer's particular selection decision. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 153 (2000).

Here, defendant is willing to assume, *arguendo*, that plaintiff has made a satisfactory *prima facie* showing. *See* Def. Br. (Dkt. No. 11) at 10 (citing *Johnson v. Toys-R-Us*, 95 F. App'x 1, 7 (4th Cir. 2004) and *Carrier-Tal v. McHugh*, Case No. 2:14-cv-00626-RAJ, 2016 WL 9016633, at *13 (E.D. Va. Apr. 15, 2016)). Defendant argues, however, that the record demonstrates plaintiff was not selected to replace Bennington based on a legitimate, nondiscriminatory reason, *i.e.*, Col. Hittle's determination that Sobieranski was best qualified for the job. *Id.* at 12–14. The Court finds this constitutes a legitimate, nondiscriminatory reason for plaintiff's non-selection. *See, e.g.*, *Miller v. McWilliams*, Case No. 1:20-cv-00671-LO, 2021 WL 3192164, at *5 (E.D. Va. Jul. 28, 2021) (collecting cases that recognize "employers' broad discretion to make holistic, nondiscriminatory hiring decisions" and that employers are "entitled to focus on [its] applicants' qualifications taken as a whole"); *Bush v. Hagel*, Case No. 1:12-cv-01483-AJT, 2014 WL 345650, at *3 (E.D. Va. Jan. 30, 2014) (citing *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 272 (4th Cir. 2005) (recognizing that an employer's "hiring decision based on an evaluation of the qualifications of competing candidates is entitled to substantial deference")), *aff'd*, 597 F. App'x 178 (4th Cir. 2015).

Indeed, when an employer makes a selection decision based on a comparison of candidates' qualifications, the non-selected plaintiff "must point to facts and circumstances that allow the reasonable inference that [the employer's] stated reason—that it did not select [him] because others were better qualified—is false and intentional discrimination motivated [the employer's] decision not to promote [him]." *Roane v. United Airlines, Inc.*, Case No. 1:16-cv-01004-AJT, 2017 WL 6667526, at *7 (E.D. Va. Oct. 12, 2017); *see also Bush*, 2014 WL 345650, at *3 (quoting *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 656 (4th Cir. 2002) ("A plaintiff 'must establish that [he] was the better qualified candidate for the position sought'")). And in doing so, a plaintiff may not "choose the areas in which [he] wants to compete" with other applicants. *Anderson*, 406 F.3d at 270. It is insufficient in this context for a plaintiff to "assert[] job qualifications that are similar or only slightly superior to those of the person eventually selected" because, under such circumstances, "the promotion decision remains vested in the sound business judgment of the employer." *Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249, 261 (4th Cir. 2006). "However, a plaintiff's 'strong showing that his qualifications [we]re demonstrably superior' is 'sufficient evidence that the employer's explanation may be pretext for discrimination.'" *Roane*, 2017 WL 6667526, at *8 (quoting *Heiko*, 434 F.3d at 261–62).

It is within this framework that the Court considers plaintiff's arguments for pretext—all of which ultimately focus on various attacks on Col. Hittle's credibility.

*First*, plaintiff argues that Col. Hittle made a series of false statements and/or undertook certain pre-selection actions designed to bolster Sobieranski's credentials and minimize plaintiff's. *See* Pl. Br. at 17–24. Specifically, plaintiff contends Col. Hittle: (1) showed "unlawful favoritism" toward Sobieranski when he allowed Sobieranski to serve "as the Acting Deputy Director during the entire selection process for the permanent position"; (2) "claimed he did not know [plaintiff]'s

experience or even what he did in his job"; (3) "falsely testified that [plaintiff] was not organizationally higher than [ ] Sobieranski . . . at the time Col. Hittle was making his selection decision"; and (4) incredulously identified Sobieranski's "participation in the development" of simulations in the 1980s or 1990s as important to his 2018 hiring decision. *Id.*

*Second*, plaintiff challenges the purportedly "late" explanation Col. Hittle offered for why he favored Sobieranski and argues his explanation shifted in focus from "practical experience to policy experience more than a decade earlier." Pl. Br. at 15.

Defendant responds, "each of [p]laintiff's purported misrepresentations had no bearing on Col[.] Hittle's decision to select Sobieranski over [p]laintiff" and thus "are immaterial to this Court's analysis." Def. Reply (Dkt. No. 17) at 14. Moreover, defendant argues that "there [wa]s no inconsistency" in Col. Hittle's stated reason for not selecting plaintiff because Col. Hittle highlighted Sobieranski's policy experience each time he was asked to explain his selection decision. *Id.* at 12.

The Court agrees with defendant. Col. Hittle's decision to select Sobieranski over plaintiff resulted from an open, structured process involving multiple levels of review and evaluation. At the first level, plaintiff received an evaluation score of 145 and Sobieranski received an evaluation score of 138. *See* Def. Ex. 12. Both, however, received "experience" scores of 55.[7] This was sufficient for each candidate, along with twelve others, to proceed to the next stage of the interview process. There, one member of the four-person interview panel rated Sobieranski as his preferred candidate, followed by plaintiff. *See* Def. Ex. 10. Another member of the panel identified plaintiff and Sobieranski as the top two candidates but believed selecting between them would have been a

---

[7] A third individual who ultimately was selected as a finalist for Col. Hittle's consideration received an overall score of 138 and an experience score of 54. Def. Ex. 12. Other candidates who were not selected as finalists received overall scores as high as 155 and experience scores up to 60. *Id.*

"really tough call." *See* Def. Ex. 13. The record, thus, does "not support any inference that [plaintiff] was overall necessarily more qualified than" Sobieranski. *Bush*, 2014 WL 345650, at *3. Rather, it shows a highly competitive selection decision that required Col. Hittle to make that "really tough call" based on who "was better qualified in [his] eyes." *Id.*; *see also id.* (quoting *Dennis*, 290 F.3d at 656) ("In analyzing whether the plaintiff has met [his] burden of proving that [he] was a better qualified candidate, it is the perception of the decision maker which is relevant.").

In making that "really tough call" Col. Hittle, stated that despite ultimately selecting Sobieranski, plaintiff came in a "very close second" place. Def. Ex. 7 at 6. Col. Hittle explained he reached that conclusion by "ask[ing] specific questions and based on the[ candidates'] responses, list[ing] strengths and weaknesses and [] ma[king] a recommendation for the individual [he] felt was the best fit."[8] Def. Ex. 7. Col. Hittle explained that Sobierasnki emerged as his preferred candidate following that exercise because he "came with fifteen years of experience in the range program . . . [which] was effectively managed from [Col. Hittle's] division" and "previously wrote Marine Corps orders, policies and directives" which was "what [Col.] Hittle need[ed] to do in the upcoming years." *Id.*

Specifically, Col. Hittle noted that Sobieranski was "one of the driving forces in developing the close coordination between the Marine Corps Ranges program and the Army [R]anges program, and as a result, [Col. Hittle's division] ha[d] policies that [we]re co-written between the Marine Corps and the Army—because Sobieranski wrote it in coordination with his Army counterparts." *Id.*; *see also* Pl. Ex. 3 (Dkt. No. 16-3) at 148–49 (Col. Hittle testifying that he

---

[8] It is worth noting that Col. Hittle stated the questions he asked each candidate were "screened and reviewed in accordance with Human Resources' policy and standard practices" and that the questions "focused on eliciting technical details of each candidate's job history, understanding the candidate's unique approach to problem solving, and offering the candidate an opportunity to indicate how he or she might best leverage their management skills and knowledge to meet the Division's mission." Def. Ex. 6.

believed Sobieranski's "credible experience building policy across service lines to other service counterparts . . . was at the crux of what tipped the scale for Mr. Sobieranski over" plaintiff and a third candidate). In contrast, Col. Hittle felt plaintiff "did not have the background on developing policy" nor a "background in similar cross-[s]ervice coordination." *Id.* Additionally, Col. Hittle observed that while plaintiff "brought a lot of skills to the table and [ ] ha[d] been in the command since the mid-2000s" his tenure there was "not quite as long" as Sobieranski's. *Id.*

At the time of Col. Hittle's decision, both plaintiff and Sobieranski "had been called on to serve as acting deputy chief," *see* Pl. Br. at 4; Pl. Ex. 3 at 12–13, and both individuals were GS-14 employees even though plaintiff was officially a "Branch Head" and Sobieranski had served in that capacity only on an interim basis, *see* Def. Ex. 7 at 4. As such, Col. Hittle was left with a difficult decision of whom to select for the posted opening. And on this record, plaintiff has provided no evidence that would allow a reasonable mind to conclude that Col. Hittle's stated, non-discriminatory reasons for his selection decision were pretextual and that intentional racial discrimination was the real reason he selected Sobieranski over plaintiff. *See Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 295 (4th Cir. 2010) ("[T]he issue boils down to whether [a plaintiff] has presented a triable question of intentional discrimination."); *DeJarnette v. Corning*, *Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (citing *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir. 1997) (plaintiff "must present *evidence*[9] reasonably calling into question the honesty of his employer's belief" that he was not the better-qualified candidate) (emphasis added)).

---

[9] The Court recognizes plaintiff's argument regarding Col. Hittle's purported destruction of evidence but finds that argument lacks merit where there is no evidence to suggest that Col. Hittle was under any obligation to preserve documents and where the parties repeatedly and affirmatively chose not to pursue discovery.

Instead, plaintiff attempts to call into question Col. Hittle's conclusion that Sobieranski was the better candidate for the position. The Court, however, reiterates that it is not tasked with judging "the wisdom or folly of the employer's business judgments" when assessing a claim of discriminatory non-selection. *Jiminez v. Mary Wash. Coll.*, 57 F.3d 369, 383 (4th Cir. 1995). Nor does the Court "'sit as a kind of super-personnel department weighing the prudence of employment decisions' by second-guessing whether a particular employment decision was 'wise, fair, or even correct.'" *Miller*, 2021 WL 3192164, at \*5 (quoting *DeJarnette*, 133 F.3d at 299). Rather, the Court is tasked with determining whether plaintiff has shown "'pretext[,]' [which] means deceit used to cover one's tracks." *Id.* (quoting *Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1005 (7th Cir. 2001)). That cannot be done "through mere speculation or the building of one inference upon another." *Perry v. Kappos*, 489 F. App'x 637, 644 (4th Cir. 2012) (internal quotations omitted).

On this record, and under such a framework, the Court "finds insufficient indicia of discrimination to warrant second-guessing [d]efendant['s] apparent good-faith efforts to assess the candidates." *Miller*, 2021 WL 3192164, at \*7 (citing *Hux v. City of Newport News, Va.*, 451 F.3d 311, 319 (4th Cir. 2006) and *Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1130 (4th Cir. 1995)). Instead, what it is left with is an evidentiary record that shows Col. Hittle consistently[10] explained why he valued Sobieranski's specific qualifications when making the "really tough call" of whom to select following a highly competitive process. The Court, thus, finds that plaintiff has not made a "strong showing that his qualifications [we]re demonstrably superior" to Sobieranski's,

---

[10] The Court does not accept plaintiff's assertion that Col. Hittle prevaricated and dissembled on the important issue of whether Sobieranski's practical or policy experience served as the factor distinguishing him from plaintiff. A fair reading of Col. Hittle's sworn declaration and EEOC testimony makes clear that Col. Hittle stated he valued Sobieranski's practical experience creating policy in both instances. *Compare* Pl. Ex. 3 ("Sobieranski previously wrote Marine Corps orders, policies and directives, and that is what our division needs to do in the upcoming years . . . . He was one of the driving forces in developing the close coordination between the Marine Corps Ranges program and the Army Ranges Program, and as a result we have policies that are co-written between the Marine Corps and the Army— because he wrote it in coordination with his Army counterparts.") *with* Pl. Ex. 1 (Dkt. No. 16-1) (explaining Sobieranski had "credible experience building policy across service lines . . . .").

*Heiko*, 434 F.3d at 261–62, and must grant defendant's motion for summary judgment on this claim.[11]

### b.    Retaliation (Claim II)

To establish retaliation under Title VII, a plaintiff must prove  (1) he engaged in protected activity, (2) his employer took "adverse action" against him, and (3) that a "causal relationship existed between the protected activity and the adverse employment activity." *Guessous*, 828 F.3d at 217 (internal citations and quotations omitted); *see also Coleman v. Md. Ct. of App.*, 626 F.3d 187, 190 (4th Cir. 2010). And as with a discrimination claim, in the absence of direct evidence of retaliation, a plaintiff who makes a *prima facie* showing as to these elements shifts the burden to the defendant to articulate a legitimate, non-retaliatory reason for its adverse employment action. *See Strothers v. City of Laurel, Md*., 895 F.3d 317, 328 (4th Cir. 2018). If the employer meets this burden, then the "burden then shift[s] back to [the plaintiff] to show th[e employer's stated] reason was a pretext to disguise the true retaliatory reason for" his non-selection. *Guessous*, 828 F. 3d at 217. And, again, in showing pretext, "a plaintiff must establish 'both that the employer's reason was false and that retaliation was the real reason for the challenged conduct.'" *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015) (quoting *Jiminez*, 57 F.3d at 378). Indeed, "'Title VII retaliation claims must be proved according to traditional principles of but-for causation.'" *Terry v. Perdue*, Case No. 20-2016, 2021 WL 3418124, at *3 (4th Cir. Aug. 5, 2021) (quoting *Univ. of Tx. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) and citing *Foster*, 787 F.3d at 252).

---

[11] "Proving pretext is the bare minimum requirement [plaintiff] must meet at trial. As discussed herein, although pretext alone may be sufficient to meet the ultimate burden of proving intentional discrimination, a finding of pretext does not compel a verdict in [plaintiff]'s favor. But because [plaintiff] is unable to present sufficient evidence on pretext, []he could not meet h[is] ultimate burden at trial." *Baka v. City of Norfolk*, Case No. 2:19-cv-00458-AWA, 2021 WL 3928836, at *10 n.12 (E.D. Va. July 28, 2021).

The Court, again, assumes *arguendo* that plaintiff has made his *prima facie* case insofar as (1) plaintiff filed EEOC complaints in 2015 and 2016; (2) plaintiff was not selected for the Deputy Director/Supervisory Head of TECD position in 2018; and (3) Col. Hittle, who later stated he was impacted by plaintiff's prior EEOC complaints, was the individual responsible for making the 2018 selection decision. The Court also finds that defendant has provided a non-retaliatory reason for plaintiff's non-selection, namely Col. Hittle's determination that Sobierasnki was the better-qualified candidate. The controlling question thus returns to the issue of pretext.

The heart of plaintiff's argument relates to Col. Hittle's testimony during the December 16, 2019 EEOC proceedings. There, the AJ asked Col. Hittle if he had "take[n] any steps to address [plaintiff]'s concerns that he was being marginalized," as expressed in plaintiff's December 2017 emails. *See* Pl. Ex. 3 at 156–58; *see also supra* n.3. Col. Hittle responded:

> . . . [Plaintiff] took that as an opportunity to say Colonel Hittle, you're marginalizing me by taking people from me. My goal was not to take people from him. My goal was to get the work done and put the resources in the right place. I was—*I felt, for the three years that I was in that job, that I had to walk around [plaintiff] on eggshells. I had to be, I don't know, overly sensitive*. I did everything in my power to be as honest with him and straightforward and leverage—give him every opportunity to avail him of any resource. If he felt he was marginalized, that wasn't the intent.

Pl. Ex. 3 at 157 (emphasis added). The AJ followed up on Col. Hittle's response by asking: "So you understand that [plaintiff] was relating – or he believed that the actions [of reassigning contractors in 2017] were being taken because of his prior EEO activity. You just disagreed with that." *Id.* at 158. Col. Hittle responded: "I did disagree. I wasn't [reassigning contractors] because there was any prior EEO activity." *Id.* Col. Hittle also stated: "I did not understand how there was a nexus to [plaintiff]s prior EEO activities with this [reassignment of contractors]." *Id.*

On cross-examination, plaintiff's EEOC counsel similarly asked Col. Hittle why he felt like he "had to walk around on eggshells with [plaintiff]" and whether that feeling was "because

[plaintiff] addressed concerns of discrimination and retaliation with [him]?" *Id.* at 167. Again, Col.

Hittle responded:

> Just because I had never been the subject of an EEO complaint. I feel I've always tried to be as extremely fair and honest and open with anyone that I worked with as I could. I've not been in that situation before, so it was new and a little bit disturbing to me because I felt like I had failed in something. Even though I hadn't even been there when whatever happened in the spring of 2015 happened, I was somehow going to be accused of something, at some point. I don't want anyone to feel that way. I don't want anyone to feel that they're being not given full opportunity to perform to their best. I wanted everyone on the team to do a good job. I just wanted to be very careful that I didn't say or do anything that can be taken the wrong way or perceived incorrectly.

*Id.* at 167–68. Plaintiff's counsel and Col. Hittle then entered into the following exchange:

> Q: Mr. Hittle, is it fair to say you felt like you had to walk around on eggshells because [plaintiff] had filed an EEO complaint that you were named in?
>
> A: The knowledge of that EEO complaint contributed to it, yes.
>
> Q: Mr. Hittle, the deputy director position was your right-hand man or woman, is that a fair assessment of the position?
>
> A: That's fair.
>
> Q: You would have to work very closely with the deputy director, correct?
>
> A: Yes.
>
> Q: Mr. Hittle, would it have been comfortable for you to have a deputy director that you felt like you had to walk around on eggshells when he was around?
>
> A: No.
>
> Q: Mr. Hittle, would it have been comfortable for you if [plaintiff] – if you had selected [plaintiff] as the deputy director, given this – what you have previously testified to?
>
> A: I don't know. I never considered that.

*Id.* at 168–70. EEOC counsel for defendant then asked Col. Hittle whether "[t]he walking on eggshells thing . . . impact[ed] [his] professional dealings with [plaintiff] on day-to-day

operations." *Id.* at 170. Col. Hittle replied: "I felt we were still able to get the work done on time in the stellar manner in which it needed to be done and to serve the Marine Corps and to follow our commanding general's guidance." *Id.*

It is against this record that plaintiff argues that "Col. Hittle's concern that he had to 'walk on eggshells' around [plaintiff] leaves wide the door for a jury to infer that his rejection of [plaintiff]'s application for the Deputy Director position was rooted in . . . retaliation." Pl. Br. at 13–14. In support, plaintiff continues that "similar expressions of discomfort about a person based on their protected class have been held to raise an inference of discrimination" and that "a reasonable jury could conclude that Col. Hittle's EEO-induced eggshells are why he did not select [plaintiff] for the Deputy Director position." *Id.* at 14.

The Court, however, finds that such testimony is insufficient to raise a triable issue of material fact regarding the "but-for" cause and "real reason" for plaintiff's non-selection. *Foster*, 787 F.3d at 252. In this case, the selection process involved multiple rounds of independent review that culminated in plaintiff, Sobieranski, and a third individual being placed in front of Col. Hittle for consideration. The selection confirmed that either Sobieranski or plaintiff would have been an appropriate selection in the eyes of the seven other individuals tasked with winnowing the candidate pool down to those final three. In such circumstances, and as explained *supra*, the Court will not second-guess the selecting official's business judgment as to which candidate was the proper choice.

The cases plaintiff relies upon to argue otherwise are inapposite. In *Merritt v. Old Dominion Freight Line, Inc.*, the United States Court of Appeals for the Fourth Circuit reversed a district court's grant of summary judgment in favor of the defendant in a sex discrimination case where there was no discussion of retaliation. *See* 601 F.3d at 291. The plaintiff there was a woman

who had been fired from her job as a truck driver "because she had failed a physical ability test following an ankle injury." *Id.* The Fourth Circuit agreed with plaintiff on appeal that "this asserted rationale was really a 'pretext for discrimination'" and that "the record as a whole" supported the conclusion that "a jury could find that discrimination on the basis of gender was afoot." *Id.* at 295.

In support of its conclusion regarding "pretext," the Fourth Circuit noted: (1) plaintiff's injury had healed by the time of her termination; (2) plaintiff's difficulty with the physical ability test "appeared to have nothing at all to do with her ankle"; (3) defendant selectively required physical activity tests to the benefit of male employees; and (4) the employee who fired plaintiff was responsible for that selective use of physical ability testing *and* operated in a workplace environment that "evinced a very specific yet pervasive aversion to the idea of female Pickup and Delivery drivers" as illustrated by employees "of all ranks" seemingly "shar[ing] a view that women were unfit for that position." *Id.* at 295–302.

Similarly, in *McCrory v. Kraft Food Ingredients*, the United States Court of Appeals for the Sixth Circuit held summary judgment was inappropriate in an age and disability discrimination case where plaintiff's supervisors testified that plaintiff was terminated because he had "problems managing and communicating with his staff" but plaintiff's staff indicated "they had no trouble with plaintiff's managerial or communication style." Case No. 94-6505, 1996 WL 571146, at *5 (6th Cir. Oct. 3, 1996). The record also revealed that before plaintiff was terminated, his supervisors had twice asked about his plans to retire and that plaintiff was told by one supervisor that he was "'uncomfortable' with plaintiff talking to customers while plaintiff was on medication." *Id.* at *6. These additional facts led the Sixth Circuit to find that defendant's stated issues with plaintiff's management style may have been pretext for the decision to terminate him. *Id.*

19

Finally, plaintiff relies on *Kimble-Parham v. Minnesota Mining & Mfg.*, Case No. 00-cv-01242, 2002 WL 31229572, at *11 (D. Minn. Oct. 2, 2002). But that case, too, involved a claim of gender discrimination that involved "direct evidence" in the form of a statement to plaintiff that her supervisors "felt uncomfortable giving orders and instructions to her because 'it felt like they were giving instructions to their mother.'" *Id.*

Each case, thus, allowed a finding of pretext in the discrimination context based on statements attributable to supervisors made prior to the allegedly discriminatory action. There is no such evidence of comments made by Col. Hittle that could be construed as retaliatory at any point during the selection process. Rather, the evidence from that process shows—in plaintiff's words—that Col. Hittle conducted his interview in a manner that "was professionally done." *See* Pl. Ex. 3 at 17; *see also id.* at 19 ("it was professional, but it was relaxed").

It is within this context that the Court must judge Col. Hittle's later testimony that when interacting with plaintiff he "wanted to be very careful that [he] didn't say or do anything that c[ould] be taken the wrong way or perceived incorrectly." Pl. Ex. 3 at 168. The Court finds that such a statement does not raise a triable issue as to plaintiff's claim for retaliation. As discussed above, the record reflects a thorough and well-reasoned process through which Col. Hittle was called upon to exercise his business judgment in selecting his preferred candidate to assume the Deputy Director/Supervisory Head of TECD role in early 2018. Col. Hittle's later testimony explaining that he needed to be cognizant of how plaintiff might perceive their interactions during that process does not render Col. Hittle's stated reasons for his decision pretextual. There is no basis for a reasonable jury to find that Col. Hittle's alleged desire to retaliate against plaintiff for his prior protected activity was the but-for cause of his decision not to select plaintiff for the job. To hold otherwise would be to discredit the entire selection process and impermissibly second-

guess the wisdom or folly of Col. Hittle's business judgments. It would require the Court to find a reasonable jury could conclude that the only possible explanation for plaintiff's non-selection was Col. Hittle's desire to retaliate against plaintiff for his past engagement in protected activity. The record as a whole in no way supports such a conclusion.

*     *     *

Accordingly, it is hereby **ORDERED** that defendant's Motion for Summary Judgment (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED** that defendant's Motion to Strike (Dkt. No. 19) is **GRANTED** for the reasons stated in open court on June 17, 2022.

The Clerk is directed to enter judgment in favor of defendant in accordance with Rule 58 of the Federal Rules of Civil Procedure.

It is **SO ORDERED**.

/s/
Michael S. Nachmanoff
United States District Judge

September 1, 2022
Alexandria, Virginia